ON WRIT OF CERTIORARI

DICKINSON, Justice,
for the Court.

We have discovered that ... to banish the knight does not alleviate the suffering of the peasant.

—C.S. Lewis
¶ 1. This is a banishment case in which the Circuit Court of Forrest County issued a suspended sentence of thirty years and then ordered the defendant not to come within one hundred miles of Hattiesburg. Upon learning the defendant had violated the banishment order, the trial court revoked the suspension of the sentence.
FACTS AND PROCEDURAL HISTORY
¶ 2. Ronnie Mackey pleaded guilty to one count of transfer of a controlled substance. The Circuit Court of Forrest County, sitting in Hattiesburg, followed the State’s recommendation and sentenced him to a thirty-year prison term, but suspended the entire sentence. The trial court imposed several requirements during the period of the suspended sentence, one of which was that, within forty-eight hours, Mackey was to leave Hattiesburg and, for thirty years, remain outside a circle with a radius of one hundred miles, centered on Hattiesburg.
*1163 ¶ 3. Despite the court’s ruling, and for reasons unexplained in the record, Mackey (involuntarily) remained in jail for approximately fifty hours after sentencing. Thus, when he was released from jail, he was already in violation of the banishment order. He was still in town six days later when he was spotted by a police officer and arrested for violating the condition of his suspended sentence.
¶ 4. The trial court revoked the suspension and imposed the full thirty-year sentence. Mackey filed a motion for post-conviction relief (PCR), which the trial court dismissed without an evidentiary hearing. The Court of Appeals affirmed the trial court’s dismissal of Mackey’s motion for PCR. He then filed a petition for a writ of certiorari, which we granted.
ANALYSIS
¶ 5. Mackey presents seventeen issues on appeal. However, because we find one issue — the banishment condition of his suspended sentence — dispositive, we shall address it and decline to address the others. We do not disturb a trial court’s factual findings unless they are found to be clearly erroneous. However, we apply a de novo review to questions of law. Brown v. State, 731 So.2d 595, 598 (Miss.1999) (citing Bank of Miss. v. S. Mem’l Park, Inc., 677 So.2d 186, 191 (Miss.1996)).
I.
Banishment
¶ 6. When a trial judge suspends all or part of a criminal defendant’s sentence, the judge is free to impose lawful, reasonable conditions which must be met during the period of the suspended sentence. In the case we review today, the trial judge suspended Mackey’s sentence, and then, as a condition of his suspended sentence, ordered him to leave town and remain at least one hundred miles from Hattiesburg. Such a condition is commonly known as banishment.
¶ 7. In considering the paucity of banishment cases in Mississippi, this Court has expressed serious concerns. Although this Court has not specifically forbidden banishment, prior decisions clearly establish that arbitrary banishment will not be upheld; that is, justification for the banishment must clearly be established in the record.
¶ 8. In Cobb v. State, 437 So.2d 1218 (Miss.1983), the defendant, Cobb, pleaded guilty to aggravated assault. The trial court sentenced him to twelve years imprisonment, and “suspended the sentence and put defendant Cobb on probation for five years conditioned that Cobb ‘leave Stone County’ and stay ’125 miles ... away’ from the county.” Id. at 1219. Cobb appealed the banishment, arguing that it did not “ ‘bear a reasonable relationship to the purposes of [his] probation.’ ” Id. In reviewing the record, however, this Court found that the trial judge had articulated a reasonable, factual basis for the banishment. Specifically, the trial judge stated that Cobb (who had shot his brother’s son[1]) had an uncontrolled temper, and he lived close to his brother in Stone County. The Cobb Court stated:
Upon the record as made and presented, we find that the conditions imposed by the sentencing judge were reasonably related to Cobb’s circumstances and his intended rehabilitation. The court recognized that Cobb’s family had experienced considerable trouble, and Cobb had been involved in a shooting of his nephew who lived near Cobb’s place of residence in Stone County. Upon these *1164 facts, we are unable to say that removing him from the area was unreasonable or arbitrary.
Id. at 1220.
¶ 9. In McCreary v. State, 582 So.2d 425 (Miss.1991), this Court expressed grave reservations concerning banishment orders. After the defendant, McCreary, pleaded guilty to a charge of rape, the trial judge accepted the guilty plea, but failed to impose a sentence. Instead, he stated that the sentence would be
taken under advisement ... from day to day and term to term, [and while the sentence remained] under advisement, [McCreary was banished from the State of Mississippi] for a period not to exceed two years, [following which], at some future time ... [his case would] be finally disposed of as a misdemeanor.
McCreary, 582 So.2d at 426. When McCreary was found in the State of Mississippi in violation of his banishment, the trial judge sentenced him to twenty years in the custody of the Mississippi Department of Corrections.
¶ 10. McCreary filed a motion for PCR, claiming his guilty plea was coerced and otherwise involuntary.[2] The circuit court denied his petition, and McCreary appealed, arguing only that his plea was coerced and otherwise involuntary. The trial court made no record of the hearing on McCreary’s PCR motion.
¶ 11. In reversing the trial court’s denial of McCreary’s PCR motion and remanding for a hearing, this Court stated: “On the record and the pleadings, we cannot safely conclude that McCreary will be unable to show that his guilty plea was unknowing and involuntary.” Id. at 427.
¶ 12. Although the Court’s reversal was based on this issue of whether vel non McCreary’s plea was voluntary, this Court also addressed the trial court’s failure to sentence McCreary following his guilty plea, stating that it found no authority to support the trial court’s disposition of the case. Id. In addressing the banishment order, this Court characterized it as “of particular concern.” Id. The McCreary Court, citing Cobb with approval, stated:
In Cobb, the Court satisfied itself from the record that the banishment provision bore a reasonable relationship to the purpose of probation; that the ends of justice and the best interest of the defendant and the public would be served; that public policy was not violated and the rehabilitative purpose of probation was not defeated; and that Cobb’s rights under the First, Fifth and Fourteenth Amendments to the United States Constitution were not violated. 437 So.2d at 1219-21.[3]
Id. at 427 (emphasis added). Then, in addressing banishment orders in general, *1165 the McCreary Court expressed its view that
banishment from a large geographical area, especially outside of the State, struggles to serve any rehabilitative purpose, and implicates serious public policy questions against the dumping of convicts on another jurisdiction.
Id. at 427-28 (citing U.S. v. Abushaar, 761 F.2d 954, 959-60 (3d Cir.1985); Rutherford v. Blankenship, 468 F.Supp. 1357, 1360-61 (W.D.Va.1979)).
¶ 13. In Temple v. State, 671 So.2d 58 (Miss.1996), this Court — expressing disfavor with banishment provisions imposed on a defendant — stated:
These conditions are unenforceable because they are not contained in the written judgment entered with the clerk, and if they were part of the judgment, this Court would be inclined to strike such conditions.
Id. at 59.
¶ 14. Following the Cobb-McCreary precedent, the Court of Appeals — striking down a banishment provision because of the lack of any on-the-record evidence supporting the factors discussed in Cobb and its progeny — stated:
[T]he trial judge failed to articulate the benefits of Weaver’s banishment. In order for the instant case to fall directly within the scope of the Mississippi Supreme Court’s decision in Cobb, the benefits of Weaver’s banishment must be established and on the record. Herein lies the error in the lower court’s decision, and the basis for our reversing and remanding this case.
Weaver v. State, 764 So.2d 479, 480-81 (Miss.Ct.App.2000) (emphasis added). The Court of Appeals did not remand the case for resentencing, but rather remanded it for clarification of an ambiguity in the sentencing order concerning probation. Id. at 481 (“On remand, the trial court needs to clarify its sentencing order.”).
II.
¶ 15. We now turn to the trial judge’s banishment order in this case, which stated:
It is further adjudicated and the court so finds that the banishment provision herein bears a reasonable relationship to the purposes of the suspended sentence or probation, that the ends of justice and the best interest of the public and the Defendant will be served by such banishment during the period of the suspended sentence, that the banishment provision of the suspended sentence does not violate the public policy of the State of Mississippi, that the banishment provision of the suspended sentence herein does not defeat the rehabilitative purpose of the probation and/or suspended sentence, and such provision does not violate the Defendant’s rights under the First, Fifth, and Fourteenth Amendments of the United States Constitution.
¶ 16. In reviewing this order, we note that its language tracks, virtually verbatim, the following language from McCreary in which this Court explained why the Cobb banishment was not reversed:
In Cobb, the Court satisfied itself from the record that the banishment provision bore a reasonable relationship to the purpose of probation; that the ends of justice and the best interest of the defendant and the public would be served; that public policy was not violated and the rehabilitative purpose of probation was not defeated; and that Cobb’s rights under the First, Fifth and Fourteenth Amendments to the United States Constitution were not violated. 437 So.2d at 1219-21.
*1166 McCreary, 582 So.2d at 426 (emphasis added).
¶ 17. The trial judge’s recitation of the McCreary factors, however, is not dis-positive. We also must determine whether the trial court “satisfied itself from the record,” id,., that the factors were present.[4] In its decision, the trial court in Cobb relied on evidence in the “record as made and presented” that established that “Cobb’s family had experienced considerable trouble, and Cobb had been involved in a shooting of his nephew who lived near Cobb’s place of residence in Stone County.” Cobb, 437 So.2d at 1220.
¶ 18. The trial court conducted Mack-ey’s plea hearing — and the plea hearing for seven other defendants in unrelated cases — at the same time. Most of the questions were asked of all eight defendants at the same time. We find nothing whatsoever in Mackey’s answers to the trial court’s questions that remotely relates to any of the McCreary factors.
¶ 19. Immediately following the plea hearing, the trial court proceeded to sentencing. The trial court asked the prosecutor if she had a recommendation concerning sentencing. The prosecutor replied:
Yes, Your Honor. The State understands that Mr. Mackey has one relative who lives in Forrest County. His other relatives do not live here. That he’s estranged from that one relative, and based upon that, the state would recommend that Mr. Mackey be sentenced to thirty years in the custody of the Mississippi Department of Corrections with all but time served suspended on his good behavior in compliance with the terms and conditions of the order of conviction, one of which is that he depart from Forrest County within forty-eight hours and remain a distance of one hundred miles from the Forrest County courthouse during the entire thirty years of that sentence and that he pay court cost, and the State would pass Count II to the file on the condition that he comply with the condition of Count I.
¶ 20. The only statement in the prosecutor’s presentation which remotely could have been viewed by the trial judge as justification for banishment was the representation that Mackey had one relative in Forrest County from whom he was estranged. We find this single, benign reference to an “estranged relative” to be a woefully inadequate factual basis for banishment under McCreary factors.
¶ 21. Furthermore, because the trial court’s order includes no factual findings supporting any of the McCreary factors, we have meticulously reviewed the balance of the record to glean any scrap of evidence available to the trial court in reaching its decision to banish Mackey. We find none.
III.
¶ 22. Today, we reaffirm this Court’s previous view that “banishment from a large geographical area, especially outside of the State, struggles to serve any rehabilitative purpose, and implicates serious public policy questions against the dumping of convicts on another jurisdiction.” McCreary, 582 So.2d at 428. One reason for our concern with banishment orders is that they preclude supervision. In other words (as provided in McCreary and Cobb), compelling reasons must be *1167 offered to justify allowing a defendant convicted of a serious criminal offense to leave the jurisdiction unsupervised, as opposed to incarceration or keeping the defendant in the jurisdiction of the court, with supervision.
¶ 23. We do not wish our opinion today to imply that all banishments are improper or disfavored. A carefully crafted banishment from a small geographic area may very well serve a substantial and legitimate concern. Furthermore, banishment from an area comprised of a county, or several counties, allows supervised probation by the Mississippi Department of Corrections. Indeed, a trial judge who wishes to “banish” a defendant from, for example, the southern six counties, may— under authority of Section 47-7-35 (which provides that courts may order the probationer to “remain within a specified area”) — place the defendant on supervised probation, and order the probationer to remain in the northern seventy-six counties. See Miss.Code Ann. § 47-7-35 (Rev. 2004). We emphasize, however, that a trial judge’s reasons for ordering banishment — regardless of the size of the geographic area — must be articulated and supported in the record by a factual basis, as required by Cobb and McCreary.
CONCLUSION
¶ 24. The judgment of the circuit court denying the motion for post-conviction relief is reversed, as is the affirmance of that judgment by the Court of Appeals. The trial court’s order revoking Mackey’s suspended sentence based on a violation of the banishment order is reversed and rendered.
¶ 25. REVERSED AND RENDERED.
WALLER, C.J., CARLSON, P.J., LAMAR AND CHANDLER, JJ., CONCUR. CARLSON, P.J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., DICKINSON, LAMAR AND CHANDLER, JJ. RANDOLPH, J., DISSENTS WITH SEPARATE WRITTEN OPINION. GRAVES, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, J.; RANDOLPH, J., JOINS IN PART. PIERCE, J., NOT PARTICIPATING.

. Fortunately, the boy survived the shooting.

. In his PCR petition, McCreary did not raise the issue of banishment.

. Other authority cited in McCreary includes: Wyche v. State, 197 Ga.App. 148, 397 S.E.2d 738 (Ga.Ct.App.1990) (banishment condition must serve some rehabilitative function); Kerr v. State, 193 Ga.App. 165, 387 S.E.2d 355 (Ga.Ct.App.1989) (same); People v. Pickens, 186 Ill.App.3d 456, 134 Ill.Dec. 746, 542 N.E.2d 1253 (Ill.App.Ct.1989) (banishment provision must bear reasonable relation to offense, provided defendant may apply for permission to enter prohibited area for legitimate reasons); U.S. v. Cothran, 855 F.2d 749 (11th Cir.1988) (banishment provision must bear reasonable relation to offense and rehabilitation); Markley v. State, 507 So.2d 1043 (Ala.Crim.App.1987) (test is whether the conditions, including any geographic restrictions, are designed to meet the ends of rehabilitation and protect the public); People v. Watkins, 193 Cal.App.3d 1686, 239 Cal.Rptr. 255 (Cal.Ct.App.1987) (same); U.S. v. Abushaar, 761 F.2d 954 (3d Cir.1985) (same); State v. Morgan, 389 So.2d 364 (La.1980) (same).

. See, e.g., United States v. Scheer, 30 F.Supp.2d 351, 353 (E.D.N.Y.1998), in which the court made detailed findings on the record that the order that defendant refrain from traveling to Florida “is directly related to the rehabilitative goal of probation” and "that the travel restriction promotes the protection of the public.”